IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PROSPER ATSU AGAKPE                                                                                    PLAINTIFF

V.                                            CASE NO. 4:23-CV-980 JM

KIMBERLY-CLARK CORPORATION                                                              DEFENDANT

**ORDER**

Plaintiff Prosper Atsu Agakpe brought this *pro se* employment discrimination case against his former employer alleging he was fired as a result of race, national origin, and age discrimination in violation of both Title VII of the Civil Rights Act of 1964, s*ee* 42 U.S.C. §§ 2000e, *et seq*., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). The parties have both moved for summary judgment. (Doc. 41 & 46). For the reasons stated below, Defendant's motion for summary judgment (Doc. 41) is GRANTED. Mr. Agakpe's motion for summary judgment (Doc. 46) is DENIED.

**I.    Standard of Review**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial on disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Additionally, the Local Rules of the Eastern District of Arkansas require the party moving for summary judgment to file (along with its motion and brief) a "separate, short and concise statement of the material facts" stating that there are no disputed facts. LOCAL RULE 56.1(a). These facts are deemed admitted when not contested by a separately filed statement of fact. LOCAL RULE 56.1(b)-(c); FED. R. CIV. P. 56(e)(2). Mr. Agakpe did not file this pleading. Rather, it appears Mr. Agakpe attempted to oppose Defendant's statement of facts in the body of his summary judgment motion. (Doc. 49). Because Mr. Agakpe has not complied with the local rule, the Court will deem Defendant's statement of fact admitted.

**II.    Facts**

Defendant Kimberly Clark employed Mr. Agakpe as a process operator at its Maumelle, Arkansas mill where it produces various types of Huggies baby wipes. (Doc. 43-1 at 5; Doc. 43-4

at 16). Mr. Agakpe, a black man born in Ghana on April 6, 1962, was 60 years old when he began working for Defendant on June 13, 2022. (Doc. 43-4 at 3, 11). Mike Cummings (then 53 years old) was instrumental in Mr. Agakpe's hiring and training and served as Mr. Agakpe's supervisor. (Doc. 43-1 at 4, 7–8; Doc. 43-4 at 6). Mr. Agakpe completed his initial on-the-job training on September 13, 2022. (Doc. 43-4 at 11). Almost immediately thereafter, however, Mr. Cumming's began receiving reports from Plant Leader Robert Baxter of Mr. Agakpe's workplace errors. (Doc. 43-1 at 9). Mr. Baxter complained that Mr. Agakpe required repeated instruction on how to do simple tasks for which he had been repeatedly and personally trained to do. (*Id.*).

One of Mr. Agakpe's responsibilities as a process operator included running safety checks on the machinery. (Doc. 43-4 at 17). One such check required each shift's process operator to run a small pouch containing metal pieces through the machine that made baby wipes to ensure that no metal could end up in the final product. (*Id.*). This quality check tested whether the machine's metal detectors were in proper working order and was considered vital to the safety of the final product. (Doc. No. 43-1 at 42; Doc. 43-4 at 17).

Mr. Agakpe was required to run the pouch through two "legs" of the machine. (Doc. 43-1 at 9). Mr. Baxter reported seeing a machine stop after metal was detected and then seeing Mr. Agakpe simply reset the machine without first checking the product to ensure no contamination. (Doc. 43-1 at 9–10, 20–21). Mr. Baxter coached Mr. Agakpe at the time on the correct procedures. (Doc. 43-1 at 9–10). Mr. Baxter also reported witnessing other line mistakes due to Mr. Agakpe not paying attention, cutting corners on quality checks, or miscounting and weighing samples. (Doc. 43-1 at 11–16, 22–23). For example, Mr. Baxter reported that Mr. Agakpe ignored directions to complete a sanitization assignment resulting in more retraining. (Doc. 43-1 at 16–17, 23–24). He also reported seeing Mr. Agakpe once take an unauthorized break

and also not knowing how to fix equipment. (Doc. 43-1 at 18–19). Mr. Agakpe's errors were witnessed not just by Mr. Baxter but also by Mr. Cummings. Mr. Cummings recalled personally coaching Mr. Agakpe after he caused $15,000 of loss when 3,000 cases of product was incorrectly produced due to Mr. Agakpe's errors. (Doc. 43-14 at 26–28).

At years' end, each operator receives a performance review. (Doc. 43-1 at 30). Using his notes from the previous months, Mr. Cummings drafted Mr. Agakpe's performance review and found that Mr. Agakpe's overall performance did not meet the company's standards. (Doc. No. 43-1 at 30–33; Doc. 43-8). Mr. Cummings stood by the performance review explaining his conclusions were supported by Mr. Agakpe's history of mistakes and continued need for coaching and supervision. (Doc. 43-1 at 33–34; Doc. 43-6; Doc. 43-7; Do. 43-9; Doc. 43-10). Mr. Cummings met with Mr. Agakpe on February 6, 2023, and together they went over the performance review. (Doc. 43-1 at 30). Mr. Cummings informed Mr. Agakpe that he was being placed on a Performance Improvement Plan "PIP" requiring a 30-day one-on-one retraining. (Doc. 43-1 at 30, 36–39; Doc. 43-4 at 11; Doc. 43-8). A specialized trainer was then assigned to work with Mr. Agakpe on all aspects of his job and, at the end of each work week, he was required to have progress meetings with a team including Mr. Cummings. (Doc. 43-1 at 36; Doc. 43-10).

Before completion of the PIP retraining, Mr. Agakpe falsified a quality check form and was fired as a result. (Doc. 43-1 at 42–43). Specifically, Mr. Agakpe completed a form for a quality check he neither witnessed nor performed. The falsification would not have been discovered had the metal pouch used in the check not also gone missing. Mr. Cummings recalled that there had been a "big quality hold because [the production line] was missing a metal detector pouch." (Doc. 43-1 at 41). After investigating the matter, Mr. Cummings discovered that Mr. Agakpe had not performed the quality check but completed the form stating that he had done so. (*Id*. at 41–42).

Mr. Cummings had Mr. Agakpe write a statement on the incident and in that statement, Mr. Agakpe admitted to the falsification. (Doc. 43-1 at 40; Doc. 43-11). He wrote "I found out that the midnight checklist still not filed, without contacting the responsible process operator[,] I went ahead and filed the . . . checklist without verifying whether the metal detector test was carried out." (Doc. 43-11). Now, Mr. Agakpe denies falsifying the form. (Doc. 43-4 at 15). Rather, he contends he simply completed the form without first determining if the test had been completed—a distinction without an apparent difference. (Doc. 43-4 at 15).

### III. Analysis

Federal law protects employees from certain types of discrimination. Success on an age discrimination claim requires that Mr. Agakpe show: (1) he was at least forty years old; (2) was meeting Defendant's expectations; (3) but nevertheless suffered an adverse employment action; and (4) similarly-situated younger employees were treated more favorably. *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007); 29 U.S.C. § 623(a)(1). Likewise, to succeed on a claim of race or national origin discrimination, Mr. Agakpe must demonstrate that: "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

Mr. Agakpe undisputedly was a member of a protected class and suffered an adverse employment action. He, however, offered no direct evidence of discrimination. As a result, his claims will be considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Mr. Agakpe establishes a *prima facie* case of discrimination, then the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its actions. If Defendant satisfies its burden, the burden shifts back to Mr. Agakpe to show

Defendant's proffered reason was pretextual. *Thomas*, 483 F.3d at 528 (citing *McDonnell Douglas*, 411 U.S. at 804). Under this standard, the Court finds that Mr. Agakpe has not shown a *prima facie* case of discrimination.

Mr. Agakpe's discriminatory firing allegations fail on their face as he has neither shown that he was meeting Defendant's expectations, nor has he identified a single similarly situated person—by race, national origin, or age—that was treated differently. Mr. Agakpe was employed less than a year. In that time, he received numerous correctives and negligently caused a production loss resulting in a finding that he was not consistently performing his job. He then was placed on a formal performance improvement plan and given one-on-one daily training. Any of these instances could have supported his termination. Further while still on the performance improvement plan, Mr. Agakpe signed a quality check form that he did not perform. Given this, Mr. Agakpe was plainly not meeting Defendant's expectations. Even if he were, Mr. Agakpe has offered nothing to support his belief that he was fired because of his age, race or national origin. He does not name any other employee who was treated differently and, in fact, admits that he never heard anyone at work say anything discriminatory or biased based on age, race, or national origin. (Doc. 43-4 at 25). In contrast, while not similarly situated in terms of roles within the company, Mr. Cummings, who was over forty, recommended Mr. Agakpe for hire. Thus, Mr. Agakpe has not met his *prima facie* burden of discrimination.

Instead, Mr. Agakpe blames Defendant for his failures. He presses that Defendant was required to provide him both an employee handbook and termination letter, and contends that this failure evidences discrimination. This is not the law. He further argues that, when he completed the quality check, he was following company policy to act proactively to accurately and promptly enter data. (Doc. 46 at 3–4, 12–13). Accepting as true that Mr. Agakpe's motivation was to help

the company by completing the form without first verifying whether the quality check had been done, he has not shown that the Defendant's legitimate, nondiscriminatory reason for firing him was pretext for discrimination. It is clear that Mr. Agakpe wanted to succeed at his job and believed he was doing everything he could to meet Defendant's expectations. That said, his belief that he acted proactively rather than deceptively does not make it so. Mr. Agakpe had no idea whether a quality check had been performed but completed a form stating that one had been completed successfully.

It is plain that Mr. Agakpe received a fair amount of feedback on his work and the need to improve. He has not, however, shown that the feedback was motivated by a racial or age animus or that other similarly situated employees did not receive the same sort of advice and questioning. *See Anderson v. Durham D&M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010). In sum, nothing in Mr. Agakpe's papers support his allegations that he was fired because of his race, age, or national origin. Rather, Defendant fired him for cause. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, at 935 (8th Cir. 2006) ("violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee").

### IV. Conclusion

Defendant's motion for summary judgment (Doc. 41) is GRANTED. Mr. Agakpe's motion for summary judgment (Doc. No. 46) is DENIED. The case is dismissed with prejudice.

IT IS SO ORDERED this 11th day of December, 2024.

_____
UNITED STATES DISTRICT JUDGE